KIRK, Judge
In this direct appeal, appellant challenges his six convictions of first- and second-degree criminal sexual conduct (CSC) and his resultant aggravated sentences on two counts. Because the district court sentenced appellant to the statutory maximum on count one, we conclude that it unduly exaggerated appellant's criminal conduct to impose both a consecutive sentence and the statutory maximum on count two. Thus, we affirm in part, reverse in part, and remand for resentencing on count two.
FACTS
On December 15, 2015, then-12-year-old C.B., a developmentally and cognitively disabled girl, reported neglect and poor *124 conditions at home to a school counselor. A few days later, she told a school social worker that her parents-appellant Brian Arthur Barthman and his wife-needed help. C.B. said that appellant needed help because he physically and sexually abused her. During a forensic interview, C.B. described multiple incidents of sexual contact and sexual penetration by appellant, and indicated that appellant touched her on her breasts and between her legs, and that he sexually penetrated her with his penis and with a sex toy-the "vibrator" incident. The incidents occurred at the family's home sometime between October 31, 2012, and December 18, 2015.
C.B. was removed from the home following the forensic interview. In a subsequent therapy session in January 2016, C.B. disclosed that her mother was present during some of appellant's sexual abuse and that her mother also had sexual contact with her. During a second forensic interview, C.B. described an incident in her parents' bedroom when both her mother and appellant had sexual contact with her genitals-the "all three in bed" incident. C.B. also described another incident in the living room when her mother was present and masturbated as she watched appellant sexually abuse C.B.-the "mom in rocker" incident.
Appellant was charged with multiple counts of CSC. Appellant's criminal complaint was amended twice to include six counts of first-degree CSC. The case was tried to a jury in March 2017. C.B. and her mother testified at the trial, as did school workers, counselors, social workers, law enforcement, and medical professionals who had worked with C.B. and the family.
After the state rested its case-in-chief, the state moved to amend the complaint for a third time to charge only three counts of first-degree CSC and three counts of second-degree CSC based on the facts elicited at trial. The district court granted the amendment without challenge. The jury found appellant guilty on all six counts. The state sought aggravated sentences, and the jury affirmatively answered five questions related to the aggravating-sentencing factors.
At the May 2017 sentencing hearing, the district court sentenced appellant to the statutory maximum sentence of 360 months (30 years) for first-degree CSC on count one, and to the statutory maximum sentence of 360 months (30 years) also for first-degree CSC on count two, to be served consecutively. Appellant asks this court to reverse his convictions or to remand for resentencing.
ISSUES
I. Was there sufficient evidence to convict appellant on count two?
II. Did appellant show prejudicial plain error warranting reversal on count two?
III. Did the district court plainly err in failing to provide the jury a sua sponte accomplice-corroboration instruction?
IV. Did the district court reversibly err in admitting appellant's possession of child pornography as Spreigl evidence?
V. Did the district court err in sentencing appellant on both counts one and two?
VI. Did the state give adequate notice of the grounds for seeking aggravated sentences?
VII. Is appellant's aggregate 720-month sentence excessive?
ANALYSIS
I. There was sufficient evidence to find appellant guilty on count two.
Appellant challenges the sufficiency of the evidence for his conviction of first-degree CSC on count two-the "vibrator"
*125 incident. Our review of the sufficiency of the evidence is limited to a thorough analysis of the record to determine if the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach the verdict that they did. State v. Webb , 440 N.W.2d 426, 430 (Minn. 1989).
Appellant argues that the state failed to prove sexual penetration or sexual contact to find him guilty on count two. Sexual penetration includes "any intrusion however slight into the genital or anal openings ... of the complainant's body by ... any object used by the actor for this purpose." Minn. Stat. § 609.341, subd. 12(2)(i) (2012).[1]
The record shows that in a February 2016 therapy session C.B. disclosed that appellant used a "toy" that "vibrated." C.B.'s therapist inferred that some of appellant's sexual abuse of C.B. involved a "dildo." At trial, C.B. testified that appellant put his penis inside of her more than one time. The prosecutor then asked, "Did dad put anything else inside of your private spot other than his penis?" After C.B. responded "yes," the prosecutor inquired, "What did he-what was the next thing that he used on your private spot?" C.B. testified that he used a "bad" or "wrong toy," which she called a "sex toy."
Appellant contends that the prosecutor's use of "on" suggests that appellant put the vibrator "on" her vagina and not inside of it. But when the prosecutor's entire line of questioning is read in context, it shows that the prosecutor was asking about what else appellant put "inside" of C.B. other than his penis, and C.B. responded, a "sex toy." Viewing the evidence in the light most favorable to the verdict, there was sufficient evidence for the jury to reasonably find that appellant sexually penetrated C.B. with a vibrator.
II. Appellant failed to show error warranting reversal on count two.
On appeal, appellant raises several alternative challenges to count two that he did not raise below. Generally, appellate courts do not consider issues not argued to or considered by the district court. Roby v. State , 547 N.W.2d 354, 357 (Minn. 1996). However, we may consider the issue if an appellant shows "(1) error; (2) that was plain; and (3) that affected substantial rights." State v. Strommen , 648 N.W.2d 681, 686 (Minn. 2002) (citing State v. Griller , 583 N.W.2d 736, 740 (Minn. 1998) ). Plain error is "clear or obvious." State v. Ramey , 721 N.W.2d 294, 302 (Minn. 2006) (quotation omitted).
A. The third amended complaint
Appellant argues that the district court plainly erred by allowing the state to amend the amended complaint after it rested because the amended count two charged a new or additional offense that required different proof that prejudiced his ability to contest the evidence. "The [district] court may permit an indictment or complaint to be amended at any time before verdict or finding if no additional or different offense is charged and if the defendant's substantial rights are not prejudiced." Minn. R. Crim. P. 17.05. An amendment charges a different offense if *126 it "affects an essential element of the charged offense." State v. Guerra , 562 N.W.2d 10, 13 (Minn. App. 1997) (quotation omitted).
We see no clear or obvious error in allowing the third amended complaint on count two. In all three complaints, count two charged appellant with first-degree CSC under Minn. Stat. § 609.342, subd. 1(a) (2012), for appellant's sexual penetration of, or sexual contact with, C.B., between October 31, 2012, and December 18, 2015. The required elements for count two never changed.
The third amended complaint merely added "vibrator" to count two to clarify the underlying incident charged and to conform the complaint to the evidence produced at trial. See State v. Miller , 352 N.W.2d 524, 526 (Minn. App. 1984) (upholding amendment adding physical control to driving-under-the-influence charge because it restated original charge with particularity and did not prejudice defendant), review denied (Minn. Nov. 9, 1984); see also State v. Levie , 695 N.W.2d 619, 628 (Minn. App. 2005) ("[R]elevant facts not previously listed in the complaint may be, and often are, elicited and admitted during criminal trials."). The third amended count two did not charge a new or additional offense, and appellant has failed to show plain error that prejudiced his defense as a result.
B. The jury instructions for first-degree CSC as charged in count two
Appellant argues that the district court's jury instructions were plainly erroneous because they lacked clarity on the elements required to find him guilty of first-degree CSC in count two. We see no clear or obvious error in the language used or the law given in the district court's jury instructions. See State v. Milton , 821 N.W.2d 789, 807-08 (Minn. 2012) (holding jury instruction was not "clear" or "obvious" error where the supreme court had not clearly articulated specific explanation for accomplice-liability instruction).
The district court instructed the jury that first-degree CSC could be proved by sexual penetration or by sexual contact, and defined those terms. Although the district court did not explicitly state which instructions applied to which counts, it did instruct the jury to consider the instructions as a whole, in light of all the others, and to consider each count separately. The verdict forms also specified which incident(s) applied to which count. When read together, the instructions fairly and adequately instructed the jury on count two.
C. Unobjected-to prosecutorial misconduct during closing argument
Appellant further contends that the prosecutor misrepresented C.B.'s testimony about the vibrator incident underlying count two during closing argument. For unobjected-to prosecutorial misconduct, if an appellant establishes plain error, then the state must prove there is no reasonable likelihood that the jury's verdict would have changed absent the misconduct. State v. Ramey , 721 N.W.2d 294, 302 (Minn. 2006).
Our review shows that the prosecutor slightly misstated C.B.'s testimony about the vibrator during closing argument but it was not intentionally misleading, and there is no reasonable likelihood that it affected the jury's verdict on count two. See State v. Smith , 876 N.W.2d 310, 335 (Minn. 2016) (noting prosecutors may not "intentionally ... misstate the evidence or mislead the jury as to the inferences it may draw").
On this record, appellant has failed to show prejudicial plain error that would *127 warrant reversal and a new trial on count two.
III. Failure to give an accomplice-corroboration instruction was not prejudicial.
District courts "have a duty to instruct juries on accomplice testimony in any criminal case in which it is reasonable to consider any witness against the defendant to be an accomplice." Strommen , 648 N.W.2d at 689. Appellant argues that the district court plainly and prejudicially erred by failing to give an accomplice-corroboration instruction sua sponte for counts four and six, denying him a fair trial. Appellant did not request the instruction at trial. Accordingly, our review is for prejudicial plain error affecting appellant's substantial rights. State v. Gail , 713 N.W.2d 851, 863 n.9 (Minn. 2006).
For count four-the "all three in bed" incident-appellant was convicted of second-degree CSC for aiding and abetting mother's sexual contact with C.B. C.B.'s mother pleaded guilty to this incident and admitted to lying between C.B. and appellant in bed and putting her finger inside of C.B.'s vagina and massaging it while also touching appellant's penis. For count six-the "mom in rocker" incident-appellant was convicted of second-degree CSC for sexual contact with C.B. on the couch in the living room, during which mother sat in a rocking chair and masturbated while she watched them.
The district court did not give the accomplice-corroboration jury instruction, 10 Minnesota Practice, CRIMJIG 3.18 (2017). The state concedes that it was plain error not to give the instruction for count four but disputes whether mother was an accomplice for count six. We need not determine if mother was an accomplice for either count because, even assuming that she was, appellant has failed to show prejudice affecting his substantial rights.
The jury was instructed on general liability for the crimes of another, 10 Minnesota Practice, CRIMJIG 4.01 (2017), and the jury knew that mother was convicted for the "all three in bed" incident. The jury also learned that mother agreed to testify in appellant's trial as part of her plea agreement. In turn, the jury was instructed on witness credibility and told to weigh the testimony in light of all of the documents provided, photographs shown, and videos played at trial. We presume that the jury was able to weigh this information in evaluating mother's credibility. See State v. Vang , 774 N.W.2d 566, 578 (Minn. 2009) (noting reviewing courts assume jury followed district court's instructions on weighing testimony).
Although the accomplice-corroboration instruction was not given, the record shows that mother's testimony was corroborated by other strong evidence of appellant's guilt at trial-mother testified to substantially the same details for counts four and six that C.B. disclosed in her forensic interview and at trial. We note that appellant was not sentenced on the counts for which he now argues that the district court should have given an accomplice-corroboration instruction. Thus, the district court's failure to give the accomplice-corroboration instruction sua sponte was not prejudicial plain error affecting appellant's substantial rights.
IV. Any error in admitting appellant's possession of child pornography as Spreigl evidence was not unduly prejudicial.
Appellant argues that the district court erred in admitting evidence of his child-pornography possession as Spreigl evidence under Minn. R. Evid. 404(b) and that the admission prejudiced his right to *128 fair trial warranting reversal of his convictions.
Other crimes or acts evidence, known as Spreigl evidence, may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Minn. R. Evid. 404(b) ; State v. Spreigl , 272 Minn. 488, 139 N.W.2d 167, 169 (1965). To be admissible, Spreigl evidence must be relevant and material to the state's case and its probative value must not be outweighed by its potential for unfair prejudice. State v. Ness , 707 N.W.2d 676, 686 (Minn. 2006). Appellate courts review the admission of Spreigl evidence for an abuse of discretion. Id. at 685. If the district court abuses its discretion in admitting Spreigl evidence, we will not reverse unless the person challenging the admission shows resultant prejudice, meaning, "a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict." State v. Clark , 738 N.W.2d 316, 347 (Minn. 2007) (quotation omitted).
The record shows that appellant sexually abused his pre-pubescent daughter C.B. and that appellant asked her to watch pornography with him one time but that she said no. C.B. testified that she knew appellant possessed and viewed pornography at their home. The record also shows that appellant was convicted of gross misdemeanor sexual misconduct in 1996 for sexually abusing his younger sister C.P. when she was a teenager. In a 1996 interview, appellant admitted to watching TV with C.P. before sexually abusing her and also admitted to watching pornography with his other two younger sisters. C.P. testified that she did not watch pornography with appellant but knew that he used it.
The district court admitted Spreigl evidence that appellant possessed over 15,000 images of child-exploitative materials (child pornography) on computers and thumb drives in his home. One investigator testified at trial about searching appellant's home and finding this evidence; the images themselves were not admitted. The district court found that this evidence was relevant and material to modus operandi based on appellant's offer to show C.B. pornographic images, and found that it corroborated C.B.'s and C.P.'s statements about appellant's pornography use.
Even if we assume that the district court abused its discretion in admitting this evidence, though it did not, our thorough review of the record shows that the state's case against appellant-which included C.B.'s testimony, mother's testimony, and video of C.B.'s forensic interviews, as well as testimony from other professionals and law enforcement agents-was very strong. The strength of the state's case convinces us that there is no reasonable likelihood that this Spreigl evidence significantly affected the jury's verdicts. With or without this Spreigl evidence, there was sufficient evidence for the jury to find appellant guilty of all six counts and to answer the aggravating-sentencing factors affirmatively. Any error committed by the district court did not prejudice appellant's case and therefore does not warrant reversal.
V. The district court did not err in sentencing appellant on counts one and two.
Appellant was convicted of first-degree CSC for count one-the "couch" incident; count two-the "vibrator" incident; and count three-multiple incidents of sexual penetration; all for acts that took place between October 31, 2012, and December 18, 2015, at the family home. Appellant asked the district court to sentence him on count three only, arguing that it also encompassed counts one and two. The district *129 court declined and sentenced him on all three counts. Appellant challenges his sentence on both counts, arguing that counts one and two arose from the same behavioral incident.
"[I]f a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses." Minn. Stat. § 609.035, subd. 1 (2016). "Whether the offenses were part of a single behavioral incident is a mixed question of law and fact, so we review the district court's findings of fact for clear error and its application of the law to those facts de novo." State v. Bakken , 883 N.W.2d 264, 270 (Minn. 2016). "Offenses are part of a single course of conduct if the offenses occurred at substantially the same time and place and were motivated by a single criminal objective." State v. Jones , 848 N.W.2d 528, 533 (Minn. 2014).
Appellant maintains that counts one and two occurred in the same location, during the same timeframe, and for the same purpose of sexual gratification, and could have happened the same day or within hours of each other. We have previously held that motivation of perverse sexual desires underlying multiple sexual contacts is too broad to establish a single behavioral incident. State v. Secrest , 437 N.W.2d 683, 685 (Minn. App. 1989), review denied (Minn. May 24, 1989). Further, regular sexual abuse over a period of years does not constitute a single behavioral incident. State v. Suhon , 742 N.W.2d 16, 25 (Minn. App. 2007), review denied (Minn. Feb. 19, 2008). The warrant of commitment listed October 31, 2012, as the offense date for counts one and two, but the record is unclear when either charged incident happened. Even if they occurred close in time, that alone does not show they were part of a single course of conduct. See State v. McLemore , 351 N.W.2d 927, 928 (Minn. 1984) (upholding multiple sentences for multiple sexual assaults of one victim over a weekend).
During her forensic interviews, C.B. was asked to describe multiple incidents of appellant's sexual abuse "from the beginning to the end." At trial, the prosecutor asked C.B. questions about multiple, distinct acts of appellant's sexual abuse, including: "Was there a different time?"; "Was there another time?"; and "Go ahead and tell us about another time." For count one-the "couch" incident-C.B. described sexual penetration by appellant with his penis on the living room couch, and demonstrated this with the use of anatomical dolls. After C.B. testified that appellant put his penis inside of her "more than one time," C.B. was asked if appellant "put anything else inside" of her "other than his penis." For count two-the "vibrator" incident-C.B. testified that "the next thing" appellant used was a "sex toy," which the parties referred to as a "vibrator."
While both incidents charged in counts one and two occurred at the family's home sometime during an over three-year time period, a review of C.B.'s testimony and forensic interviews shows that C.B. described two distinct acts of sexual penetration by appellant at different times and in different ways.
On this record, the district court did not clearly err in finding that counts one and two were separate and distinct behavioral incidents and sentencing appellant on both counts.
VI. Appellant received adequate notice of the state's grounds for seeking aggravated sentences.
Appellant argues that the state failed to provide adequate notice of its intent to seek an enhanced sentence under Blakely . The state must give notice of its *130 intent to seek an enhanced sentence and "must include the grounds or statutes relied upon and a summary statement of the factual basis supporting the aggravated sentence." Minn. R. Crim. P. 7.03 ; see Minn. Stat. § 244.10 (2016). A jury must then find the "additional facts" that support a substantial or compelling reason to depart beyond a reasonable doubt. State v. Rourke , 773 N.W.2d 913, 919 (Minn. 2009) (citing Blakely v. Washington , 542 U.S. 296, 301, 303-04, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) ).
Here, the state filed a form rule 7.03 notice in January 2016, and another form notice a week before trial in March 2017, noting its intent to seek, and the grounds for seeking, an enhanced sentence. Both notices advised that the potential aggravating factors for an enhanced sentence were not limited to those enumerated. These notices were adequate under the rule. However, appellant maintains that because he did not receive the special-verdict-form questions for the aggravating-sentencing factors in advance, he did not receive proper notice. But neither Minn. R. Crim. P. 7.03, Minn. Stat. § 244.10, nor Blakely requires the state to provide advance notice of its specific proposed questions on the aggravating-sentencing factors. And appellant raises no other substantive or procedural challenge to the state's rule 7.03 notices.
Further, before the special-verdict forms were provided to the jury at trial, appellant had an opportunity to review the forms and raise any objections to the questions. The district court made slight changes to the forms but properly denied appellant's request that the questions reflect only the statutory aggravating factors in light of Rourke . Id. at 921-22 (concluding "particular cruelty" is the reason why facts of a case provide substantial and compelling reason to depart, and the jury must find the additional facts underlying the reason, not the reason itself).
On this record, appellant has failed to show that advanced notice of the Blakely questions was required or that the failure to provide such notice was prejudicial error. State v. Chauvin , 723 N.W.2d 20, 24 (Minn. 2006) (noting that Blakely errors are subject to harmless-error analysis).
VII. The sentence on count two was excessive and exaggerated the criminality of appellant's offenses in our collegial experience.
Appellant argues that the district court erred in imposing consecutive sentences and by imposing the statutory maximum of 360 months on both counts one and two, a more-than-double upward durational departure.
A. Permissive consecutive sentencing was not a clear abuse of discretion.
Appellant first challenges his permissive consecutive sentences on counts one and two. A district court may impose permissive consecutive sentences, without a departure, for multiple current felony convictions for first-degree CSC. Minn. Sent. Guidelines 2.F.2(a)(1)(ii); 6 (2012). Thus, the district court did not clearly abuse its discretion in imposing permissive consecutive sentences here. See State v. Fardan , 773 N.W.2d 303, 310 (Minn. 2009) (noting permissive consecutive sentences are reviewed for a clear abuse of discretion).
B. Particular cruelty and vulnerability supported aggravated sentences.
Appellant next challenges his aggravated upward durational departures. For count one, the guidelines sentence was a presumptive commitment of 144 months *131 with an upper limit of 172 months. Minn. Sent. Guidelines 4.B (2012). On count two, the presumptive duration and upper duration limit for a permissive consecutive sentence were the same. Accordingly, a more-than-172-month sentence on either count was an upward durational departure. Minn. Sent. Guidelines 2.F.2(a); 4.B (2012). Here, the district court imposed 360 months on each count, the statutory-maximum sentence for a first-degree CSC conviction. Minn. Stat. § 609.342, subd. 2(a) (2012). Thus, the cumulative 720-month sentence on both counts was more than double the cumulative presumptive duration of 288 months.
The district court found that appellant's particular cruelty and C.B.'s particular vulnerability justified this significant aggravated durational departure. To justify an aggravated departure, there must be "substantial and compelling circumstances" showing that the defendant's conduct was significantly more serious than typically involved in the commission of the offense in question. State v. Jones , 745 N.W.2d 845, 848 (Minn. 2008) ; Minn. Sent. Guidelines 2.D (2012). We will affirm an upward departure if the grounds are "legally permissible and factually supported in the record," but we will reverse if the grounds for a departure "are improper or inadequate." State v. Hicks , 864 N.W.2d 153, 156 (Minn. 2015) (quotations omitted).
Particular vulnerability and particular cruelty are proper grounds for an aggravated departure. Minn. Stat. § 244.10, subd. 5a(a)(1), (2). In answering the Blakely questions for particular vulnerability, the jury found that C.B. has a chromosomal defect and a cognitive developmental delay, and that appellant knew about these vulnerabilities. The jury's findings are clearly supported by the testimony of C.B.'s mother, school workers, and medical professionals, which showed that appellant was aware of C.B.'s ongoing services and appointments to address her cognitive and developmental delays.
In answering the Blakely questions for particular cruelty, the jury found that appellant subjected C.B. to multiple forms of sexual penetration and sexual contact. Again, there is ample evidence in the record to support appellant's particular cruelty, including C.B.'s forensic interviews and testimony, as well as the testimony of C.B.'s mother and the professionals who worked with C.B. The record shows that C.B. is now racked with feelings of guilt and desperation as a result of appellant's sexual abuse.
On this record, the factors of C.B.'s particular vulnerability and appellant's particular cruelty legally and factually justified an aggravated departure.
C. Imposing consecutive sentences of the statutory maximum on both counts one and two was not justified on this record.
Appellant argues that even if these aggravating factors justified a departure, a more-than-double upward durational departure on both counts is excessive, beyond the scope of the evidence presented, and unduly exaggerated the criminality of appellant's conduct compared to similar cases. We agree.
An upward departure may not "unfairly exaggerate the criminality of the defendant's conduct or punish a defendant twice for the same conduct." State v. Edwards , 774 N.W.2d 596, 601 (Minn. 2009). "[C]ircumstances justifying a combined departure that more than doubles a presumptive sentence are extremely rare. However, this court has recognized that consecutive sentencing may be combined with a double durational departure when *132 the aggravating circumstances are severe." Rairdon v. State , 557 N.W.2d 318, 327 (Minn. 1996) (upholding a mandatory life sentence for first-degree murder and two consecutive sentences double durational departures for first- and second-degree intrafamilial sexual abuse) (citations omitted).
Our review of the entire record shows that the aggravating factors in this case are severe, and we agree with the prosecutor's synopsis at sentencing that the facts and circumstances here are "horrific." In reviewing appellant's sentences, however, our final analysis "must be based on our collective, collegial experience in reviewing a large number of criminal appeals from all the judicial districts." Id. (quoting State v. Norton , 328 N.W.2d 142, 146-47 (Minn. 1982) ). In our collective experience, appellant's 720-month cumulative sentence here is excessive, beyond the scope of the evidence presented, and unduly exaggerates appellant's criminal conduct in light of similar cases.
A recent unpublished case from this court is instructive. In State v. Guzman-Diaz , we reviewed an appellant's first-degree CSC conviction for sexually abusing his daughter once or twice a week from the ages of 9 to 14. No. A17-1231, 2018 WL 3520535 at *1-2 (Minn. App. July 23, 2018). In that case, the father engaged in hundreds of incidents of sexual contact and sexual penetration of his daughter while she was in his care and control; he also threatened to kill her family members if she revealed the abuse. Id . at *1. The father was found guilty by a jury of three counts of first-degree CSC, but the district court sentenced him to the upper limit, non-departure 172-month sentence on one count of multiple acts of sexual abuse over a period of time. Id . at *2. We affirmed on other grounds. Id. at *6.
In Guzman-Diaz , no departure was requested and the district court adjudicated on only one verdict eliminating the potential of a permissive consecutive sentence. In comparing a 172-month sentence in that similar case involving horrific acts of child sexual abuse over several years, we believe that a 720-month sentence in appellant's case unduly exaggerates the criminality of his conduct. At sentencing, the state recommended the statutory maximum of 360 months on count one, and a consecutive 240-month sentence on count two, for a total of 600 months or 50 years. Here, the district court properly sentenced to the statutory maximum on count one because there are aggravating factors that could justify a statutory maximum sentence. On count two, the district court had discretion to durationally depart, but imposing a departure of more than double the guidelines sentence on a consecutive sentence for a single victim is inappropriate based on our collective experience and our caselaw. Cf. Rairdon , 557 N.W.2d at 327. Accordingly, we reverse the district court's sentence on count two and remand for resentencing within the range of 288 to 344 months.
DECISION
Appellant's conviction and sentence on count one is affirmed. Appellant's conviction on count two also is affirmed, but we reverse and remand to the district court for resentencing on count two consistent with this opinion.
Affirmed in part, reversed in part, and remanded.

The warrant of commitment lists the offense date for counts one and two as October 31, 2012. Accordingly, we cite to Minn. Stat. § 609.341 (2012), the version of the statute in effect on that date. Because appellant was convicted of six counts occurring between October 31, 2012, and December 18, 2015, we also note that Minn. Stat. § 609.341 (2014), the version of this section in effect on December 18, 2015, is identical to the 2012 version. This same reasoning applies to the other statutory and sentencing guidelines provisions cited for counts one and two in the remainder of this opinion.